All right. Can each of you hear me, Mr. Rubenstein and Mr. Olms? Yes. Excellent. So this is a first for the Court of Appeals. This is an entirely remote argument given what's been going on in Chicago. So I just wanted to let you know first that we don't have the same kind of formal timekeeping that we would ordinarily have. So I will ask whoever is arguing first how much time you want to save for rebuttal, and I will endeavor to remind you when you have reached that point in time. But we might need to be a little flexible. So I will invite – our first case for today, I will say for the record, is Continental Vineyard or Vineyard v. Vinifera Wine Company, numbers 192089 and 192173. And the Court is ready to hear argument. Thank you, Your Honor. This is Todd Olms. I would like to reserve five minutes for rebuttal pursuant to your request. Very good. May it please the Court. My name is Todd Olms, and I represent Plaintiffs Appellants, Continental Vineyard, LLC, and Index Paso Robles, LLC. For purposes of this argument, I will refer to both of these parties collectively as Continental or Plaintiffs. I would like to thank the Court and its entire team for devoting the time and resources to hear this oral argument under these most difficult circumstances. This matter involves an appeal from the district court's order denying plaintiffs' motion for a new trial, as well as the district court's order partially granting defendants' motion for partial summary judgment. After a lengthy stay that resulted when one of the defendants sought protection under the Bankruptcy Code, the case proceeded to a jury trial before Judge Durkan. The jury instructions provided that Defendant Drozowski reached his fiduciary duty of loyalty if, one, he owed a fiduciary duty to plaintiffs, and, two, he, quote-unquote, injured either or both plaintiffs. The first element, Defendant Drozowski's fiduciary duty owed to plaintiffs, was undisputed at trial based on his service as officers of both plaintiffs. Meanwhile, with respect to the unfair competition claim, the jury was instructed that Continental had to prove as an element of the claim that plaintiffs, quote-unquote, were injured by either or both defendants' acts. In other words, between these two claims, there were overlapping elements. Did those elements overlap? Certainly, injury of some type needs to be shown for each of them, but wouldn't the measure of damages be different for the breach of fiduciary duty claim than it would be for the unfair competition claim? Well, the measure of damages might be different depending on the nature of the damages that the jury chose to award. As the court is likely aware, the other inconsistency that existed here was the jury found Defendant Drozowski guilty of unfair competition, which included, in order to reach that liability finding, they had to find that there was an injury. But yet, after distinct polling by Judge Durkin, still refused to award any damages. When we look at the cases that the Seventh Circuit has ruled upon regarding Rule 59 motions and inconsistent verdicts, this case really has two inconsistencies. The first is the one between the counts. But for purposes of this discussion, another one that's extremely relevant, given Seventh Circuit precedent on this issue, Judge, is the inconsistency internal to the unfair competition count alone. You know, we are required to reconcile these matters if it's at all possible. And I wonder two things. I wonder whether this court is bound by the district court's assessment about whether they could be reconciled. And my other question, which you can come to in a minute if you want, is whether you forfeited or waived these points by not calling them to the district court's attention before the jury was disbanded. Sure. Let me take the first question regarding whether we're bound by the district court's finding. The district court did find that the verdicts were irreconcilably inconsistent, was the quote used by Judge Durkin. That has not been appealed by defendants' appellees. Also, Continental's breach of fiduciary duty claim arises from the fiduciary duty that Mr. Drasowski owed Continental as its president. And its unfair competition claim involves the duty that Drasowski owed as the owner of a rival wine company. The fact that those duties are separate doesn't remove the fact that the overlapping element was the same, and that was the injury to Continental. But you're conceding that those were potentially two different injuries to Continental? Two different types of injury. Types, yeah, and natures of injury. So I just wonder about that, because the cases for inconsistent verdicts, such as the Tarina case, which I know you rely on quite a bit, it was actually literally impossible to implement both parts of that verdict. You couldn't do A and not A at the same time, whereas I don't see quite that level of inconsistency here. Well, I think if you look at the unfair competition count, it's noteworthy, because there the jury, in order to reach liability, had to find injury, but yet awarded no damages. And so that's very similar to the case addressed by Judge Cannelli, the in-ray testosterone case. And pardon me, I just lost my spot here. So when you look at what Judge Durkin did, and your question was, did we waive this by not raising it? Both the district court and plaintiffs noted the inconsistency in the jury's verdict internal to the unfair competition count right as it came out. In fact, the district court attempted to address that inconsistency after a sidebar by pointing out the jury's failure to complete the verdict form and pulled the jury specifically on that issue. You can find that in the trial transcript at pages 1856 to 1860. However, that had no effect. Instead, the jury actually recommitted to its inconsistency internal to that count alone by, one, unanimously saying that Defendant Drozowski had engaged in unfair competition, which required this finding of injury to the plaintiffs, one or more of the plaintiffs, but also then simultaneously stating unanimously that no damages should be awarded. Right, because what the judge thought was that the jury thought that there were so many benefits conferred. It's a very bizarre unfair competition claim, I have to say. Usually, you see these situations where the producer of the less expensive, less quality product is trying to pass off that product as the more prestigious product. But this is inverted. This is Vinifera supposedly being the less expensive product and is somehow allegedly hurting Continental by mixing up the reputations of the two. I'm just not sure how that really fits in the normal paradigm. The conduct that was at issue here specifically was Defendant Drozowski, as president of this company, utilized all the same resources, the same winemaker, the same grapes, the same mixing, and actually entered the same two wines under two different labels in the same wine competition. And so you can imagine if you're a purchaser of wine, especially a distributor buying in bulk, if you taste two and you're trained in this and you have the ability to discern that while these wines are dramatically the same, but I can buy one at $10 a case less than the other, that wine does have a benefit, obviously, in the marketplace. Also, the other aspect that is cited by the district court judge that I think is important here is that during the interactions with the jury when he polled them, there was no mention of an offset. And that was consistent with the fact that defendants failed to raise offset as an affirmative defense or really adduce any evidence at trial regarding that. So after attempting to address that inconsistency within the unfair competition count alone, the parties in the district court could have plowed ahead and attempted to address the inconsistency between the unfair competition count and the breach of fiduciary duty count, but that was not done until the Rule 59 motion. And I think, importantly, that's consistent with existing Seventh Circuit law on this issue. Mr. Ohms, it's Judge Scudder. Let me ask you this question. Did you try the case? I was one of the, yes, you're right. Okay. Suppose that we had a conversation before trial, and I would have said to you, we can predict with 100% certainty that you're going to prevail on the unfair competition claim. And you said, I agree, I think 100%. If I then asked you, okay, what's the likelihood if it's 100% on the unfair competition claim that the plaintiff also wins on the fiduciary duty claim? What do you think you would have said? Well, it would have been 100% because of the overlapping elements. Okay. It should be. Right. Okay. And so, given that you can predict it with the level of confidence that you just articulated, why no contemporaneous objection when the verdicts came back? I think the answer, Your Honor, is the first objection in discussion that occurred at sidebar with Judge Durkin was regarding the noteworthy aspects of the jury's verdict on the unfair competition count. And once that was done, it was apparent, and we see this in many of the cases that the Seventh Circuit has ruled upon. For instance, Chief Judge Wood in the Eternia case stated, even if we have somehow overlooked a way of reading this verdict that might, at a stretch of the imagination, support a verdict for one side or the other, we're convinced that it is sufficiently confused that a new trial on count two is necessary. Many people have asked me about this case and said, well, do you think that the jury was trying to abuse its discretion? And I have no evidence of that. That would be pure speculation. But we do know from just attempting to resolve the unfair competition count inconsistency that there was a fair amount of confusion. And so I think the answer is when we start to look through this, especially from the standpoint of a trial lawyer, in response to Your Honor's question, we can try to come up with all of these type of circuit breaker instructions that would say, if you find for X on count Y, you need to find for B on count Z. I've actually seen that attempted in other trials, and it was eventually rejected before the case was submitted to the jury because the instructions became so overwhelmingly complex. And I think the answer as a trial lawyer is, you know, we as a bench and as the bar have collectively generally decades of experience before we try these types of cases to a jury. And we attempt to communicate to the jury the law that we have the benefit of all this education and experience on through jury instructions. And we try to distill it down to what they need. And in our system, there is a benefit to finality. But our system is premised upon fair jury verdicts. We want finality through fair jury verdicts, not just finality for the sake of finality. And I think if we look at cases like Kosminka, where circuit breaker type instructions were advocated, there's still an inconsistency. In this case, a circuit breaker instruction couldn't have precluded the inconsistency internal to the unfair competition count, because it wouldn't be referencing other counts. It would be just referencing the elements of the unfair competition claim. And I think what we have to basically accept as a bench and a bar is that our efforts to distill this body of knowledge of the law down to instructions that the juries can use to apply the facts that they find to the law to reach a verdict, sometimes, like many systems in life, suffers from friction points and inconsistencies. And the issue is, how do we address those inconsistencies? The Seventh Circuit, through Gordon, Tim, and Ternia, has consistently held that those should be addressed and can be addressed through a Rule 59 motion that was timely filed. But it's not that consistent, because there are the later cases that cast some doubt on that. And really, our whole system is designed to try to allow the district court the opportunity to fix whatever problems there are before they become baked into the system, before it becomes a frozen record on appeal. And our sister circuits have looked at this and have said, maybe there is a way to solve this problem. If you call it to the district court's attention, maybe by now you would have long since finished the second trial. I don't know. But it's generally efficient to have the district court do that. And as I look at this record, you would have had plenty of time to do that, as the district court is polling every juror, saying, did you really mean zero damages here? This isn't something, as happened in Ternia, where the district court actually forbids the lawyers from being in the courtroom, which was a somewhat bizarre aspect of that case. So I'm just concerned from a procedural point of view about coming in at this late stage with a motion for new trial. Your Honor, I believe your question is addressing the cases of Fox, Pearson, and Carter. Yeah. Fox and Pearson. And the sister circuits that have developed this further. Sure. Let me address those cases within the circuit, and then I'll turn to the one outside of the circuit before I exhaust my original time. Fox and Pearson, as you know, did not find any inconsistency. They found that the verdicts were consistent and were able to reconcile them. And I don't think, as we discussed earlier, that that's possible here, given the nature of the overlap. Carter was interesting in that Carter cited the progressive accounting case and cites a footnote that says this is an open issue. But if you look at that footnote in that case, footnote six in will account, it will versus comprehensive accounting. You find that the footnote only really addresses the speaks of an open issue in terms of an inconsistency between a special verdict and a general verdict. All of the other cases in the Seventh Circuit that have addressed this have dealt with the situation here, which are inconsistencies between general verdicts or, as we know from my prior discussion, an inconsistency internal to just one general verdict. And so I think the weight of authority from this circuit, even if you look at Carter and will versus comprehensive accounting, with respect to this specific situation, is Gordon, Tim, and Tanya all fine that you can raise this through a timely file. Several times you've used the phrase, given the nature of the overlap and referring to the two counts. Could you just articulate explicitly what you see as the nature of the overlap? Sure. The element. Pardon. This is much easier in person with paper. The nature of the element here of the overlap is that in the breach of fiduciary duty count, the only element that was not stipulated to through trial or the only element that was remained in dispute was, quote unquote, whether or not the plaintiffs were injured by either or both defendants acts. And in the unfair competition count, to find liability, the jury was forced to find that one or more of the defendants, quote unquote, injured. I'm sorry, the plaintiffs were injured by either or both of defendants acts. And in the breach of fiduciary duty count, the only element that was undisputed or that was in dispute was whether or not defendant Drozdowski injured either or both plaintiffs. So there's the specific nature of the overlap. And if I could go back before my time expires to answer Chief Judge Wood's question regarding the other circuits. Judge, if you look at, I don't have time to go through them all, but if you look at the OHA case from the 10th Circuit, there, they apply this more stringent standard that you were referencing. However, the OHA case makes a specific exception that it would apply here. And it says we're not going to require it to be raised before the jury disbands, because if there is an irreconcilable, inconsistent verdict, we're going to make an exception. And that's exactly what Judge Durkan found here. I think the overall answer. You are you are in your rebuttal time just so that you know. I'll wait for rebuttal. Thank you, Your Honor. All right. Thank you very much, Mr. Olmes. Mr. Rubenstein. Thank you and good morning, Your Honors. Jan Rubenstein on behalf of Vinna Farah and Randy Dzersky. It is an honor to argue in front of you today. This is the first time I've had this opportunity. I want to address something initially that I don't want to be overlooked, and that's the issue of the alleged inconsistencies themselves. Now, if you take a look at the actual jury instructions that counsel is arguing require consistent verdicts amongst the two causes of actions, his argument fails basically just on the facts. The breach of fiduciary duty references that defendant Randy Dzersky breached his fiduciary duty and provides the elements to the jury. The unfair competition claim in the first sentence references that defendants Randy Dzersky and Vinna Farah Wine Company LLC engaged in unfair competition. Now, what's been ignored in the hundreds of pages that have been provided to this court is that a jury and we don't have any justification for what they actually decided, but they were free to decide that Vinna Farah Wine Company engaged in unfair competition, but that Randy Dzersky did not breach of fiduciary duty. Those two items are not dependent upon one another. In fact, they can be completely independent of one another. And it seems to me from looking at this, I was not trial counsel, but it seems to me that that's exactly what the jury did. The jury looked at the unfair competition and noticed, number one, that there is an additional party added to that instruction that's not on the breach of fiduciary duty instruction. So it broadens their ability to find liability on that particular issue. Now, the other issue on the claim of inconsistencies among the two causes of actions is that if the second claim of inconsistency, meaning finding liability on the unfair competition, but zero damages. If that's proper and that's upheld by this court, then it's a moot issue. Okay, whether or not there would have been liability on one, two, or five of the causes of actions, the jury still found the plaintiff failed to meet their burden to prove any damages. So in the event, and that's really going to be my second argument, but in the event that the court deems that that's proper, that would be proper for any and all causes of action where they would have in theory found liability. But again, the plaintiff failed to produce any type of reasonable certainty as to any damages. And it looks like that's what the jury is telling us also, that while they may have sustained their burden on the liability side, which requires only some element of the existence of an injury. They could also at the same time fail to establish the amount of that injury with any reasonable certainty or that the injury was nothing more than something nominal. I mean, in just having a conversation about this earlier, 0.001% of a penny would be in theory, the existence of an injury, but it's not necessarily a compensable damage. Okay. It's not an amount that can be awarded. And those things are not inconsistent with one another. Again, nor are the causes of action when you look at the fact that there are additional parties involved in each of those causes of action. With the last confounding factor, which we did not have a chance to discuss with Mr. Holmes, but it's really your cross appeal. We have the jury's findings on these claims. No, no injury for the breach of fiduciary duty. Yes. Liability on unfair competition, but in the end zero damages from that seemingly because the jury was maybe they just thought there was a failure of proof as to the certainty of amount, I'm not sure. But then we have the trial court going back to the unjust enrichment claim, saying this was an equitable claim, it should, you know, it's basically for the court. It was an advisory jury verdict, but I'm now going to make my own findings of fact and imposing the 285,000 some amount of debt amount that your client needs to pay over to disgorge those profits. And so somehow in the end, the judge seems to have come to what he thought was an equitable resolution of these claims that may be unfair competition was not quite the right match and the jury sense that maybe for that matter, breach of fiduciary duty. We haven't talked about the corporate opportunity issue, but that's floating around there. But, but we know that Mr jerzyowski did present this opportunity twice to Mr Floyd. Yeah. Any anyway so. So what's wrong with the bottom line of what the district court came to. Well, the bottom line is that the court took this out of the hands of the jury after a decade of litigation. Well, this was a, but it was equitable if it was just an advisory jury was the court obliged to leave it with the jury. Well, the court was for two reasons, and number one and I point this out my brief I don't want to belabor the point, but there's no authority in Michigan or that we've located anywhere else, or in Illinois, but the unfair competition is decided under Michigan law. There's no authority under Michigan that would allow disgorgement equitable relief on an unfair competition claim there's no case anywhere that allows it now. Mr. Holmes cites the third restatement of contracts as some sort of binding precedent and we disagree with that. Well, he's not citing it as binding precedent he's saying if you're making an eerie guess about what the Michigan courts would do the Michigan courts in other circumstances have looked to the third restatement for guidance. And there's no reason to think they would not do so here so what's wrong with that reasoning. Well, there's nothing that requires it. The restatement. Right, we're just a federal court we're trying to predict. It's just advisory. The other problem with it is the same trial court judge months earlier indicated that the jury's finding on the fiduciary duty issue is going to be exhaustive of all issues both legal and equitable. I'm sorry, both monetary and equitable, and that became at that point in time, the law of the case that was the court's order, and the court was required to comply with its own orders, just for substance of due process and fairness to all parties. The parties do have a right to rely on the courts, April 2018 order, which indicated that the jury will decide the question of liability on breach of fiduciary duty, and the court will be bound by that liability finding across all plaintiffs claims, whether seeking damages or equitable relief. So, apparently, thereafter, the, the trial court judge didn't sign. Can I pause you right there. That last point may be important. I didn't, I didn't recall, but I may be mistaken judge jerk and being quite as explicit as you just stated. In other words, did he say that I'll be bound by the jury's determination for all purposes, including any in all equitable relief. Yes, that's a direct quote from the April 5 2018 order at a 050, which is the bait stamp. So that that was the direct quote that was not a paraphrase from the trial court judge that he indicated in that order. And I'm just looking at it. Now, the court will be bound by that liability finding across all of plaintiffs claims, whether seeking damages or equitable relief. And then just after that, that line cited to Allen versus International Truck and Engine Corp 358 F third for 69. Seven circuit 2004 case. And the, the following sentence was that factual issues common to damages and equitable claims must be tried to a jury whose resolution of factual matters will control. So at this point in time, the damages question is a factual matter that the jury did result. And that damage issue. It's very interesting how the damages issue was presented to the jury. And I understand and I appreciate counsel's argument about the offset. But when the offset language was used, that was simply a possibility. Essentially, as I read it, the court was speculating as to what a jury could have done in finding liability on the unfair competition, but no damages. And the court indicated in its written order. Well, they could have believed that their plaintiff failed to meet their burden of proof that there are different burdens that could have been an offset. And that could have been an offset. I'm sorry. And that's a paraphrase has been kind of harped on by the appellant in this particular case as well. Look, there's no offset. There's no pleading of an offset. But even the damage instruction given to a jury asked them to look at, quote, lost profits and expenses. Okay. Now, the first issue that the jury was looking at lost profits would require them to offset things. I mean, a profit, as we all know, is a revenue minus expense. So there's a requirement of an offset. Now, a lost profit would require a little bit more. It's not just a profit, but a lost profit. What did we lose from this? And in doing so, there was a lot of testimony that I've read from the trial court about the benefits that were provided to Continental based on all of the things that were done by the defendants in this case. So certainly the possibility that a jury could have looked at an offset, it's not an offset from a defendant's stance and a permanent defense offset. It's an offset just because they had to look at what's a profit and what's a lost profit, which apparently they found none. And they're justified in finding them. So could I ask you, I mean, you've cited to some language from the district court judge, but I'm looking at the May 10, 2019 order where in part three, he turns to disgorgement. It's A013 in the opening brief or page 11. I don't know, they're all different paginations. But in any event, he begins by saying, okay, no damages for unfair competition. Cool. Bound for defendants on unjust enrichment. That's established sufficient evidence. But then he says he explained in a pretrial opinion that the jury's verdict is merely advisory on the issue of equitable disgorgement, which is when he turns to his analysis of that point, ends up with that chart, you know, covering the time period that he thinks is relevant. So has he just issued conflicting statements about this? Or why can't he, when all is said and done, make sure that he's tied up all the loose ends and considered equitable disgorgement as well? Well, I think, and I don't want to be, I don't want to be redundant, but I think simply because he previously ordered that the jury will be the determining factor on all factual issues, which this would be a factual issue. So I do think he's given inconsistent results or orders in this particular case. And I think for the issue of fairness, that should be rectified. And it should be rectified from his previous order, which was not challenged, not from a motion for relief from order, not in this subsequent appeal. There's been no challenge to that language from the April order that the jury's finding would be exhaustive and binding on both equitable and monetary damage issues. Okay. Aside from that, I don't want to belabor the point. I think the majority of my argument, I mean, it isn't incorporated into my brief, so I don't want to just repeat everything in there. I know that everybody has read it. If the panel has any questions for me, I'd be happy to entertain them. I have one more question. As the court was originally dealing with the alleged inconsistent verdicts, the judge himself says, you know, gee, I actually omitted an important instruction. This gets a little bit to the Rule 51 issue, but also more broadly the way he handled this. And he says, I should have included in the instructions to the jury an instruction that says, basically, don't render inconsistent verdicts. And I was not terribly taken by that point. It seemed to me that would clutter up instructions, and you would need to say that all the time if you had a multi-count case, which is not uncommon. So, you know, what else do you think the judge should have instructed the jury, and was any such argument preserved? Well, and that's a great point. I'm actually glad you asked that question. That instruction is, I think, necessary, and I agree with the trial court judge. In the event that you have causes of action, and in the event that you agree with the appellant's position here that those two causes of action are mutually dependent upon one another, that you cannot find liability on one without liability on the other, certainly that should be addressed prior to the jury being in panel and prior to them making their decision. Now, it's an interesting approach that the appellants take in this case, indicating that they have no issue with the jury instruction, but they have an issue with how the jury applies those instructions. Well, the interesting thing about it is, and I'm, again, going to the inconsistency that they claim regarding the two causes of action, those jury instructions, the claimed inconsistency directly relies on these jury instructions. So, in order to solve this problem, and it's a little bit of tap dancing from a frenetic standpoint, in order to solve this problem, from the appellant's standpoint, if he was right, you would have to either revise those jury instructions that were provided or add a cautionary instruction regarding inconsistent verdicts. Neither one of these were done. We're trying to paint a picture that this is not a problem with the jury instructions, because that's how appellant can try to avoid Rule 51, but it actually is. There's either a revision required or an addition required to the jury instructions in order to alleviate this issue. And, again, these are jury instructions that were produced by trial counsel at the trial court level. Everybody approved them without objection, and they say what they say. But I go back to the point, me personally, that I don't believe there is any inconsistency. I've read these jury instructions. I think that the jury verdict works both ways, and it can be factually and legally appropriate to find, just as the jury did in this case. Okay. You still have a little bit, but if you're finished, we are perfectly happy to move on. Any other questions from my colleagues? Not for me. All right. Well, then, thank you, Mr. Rubenstein. And anything further, Mr. Olmes? I think you have about four more minutes. Yes, Your Honor. Thank you very much. First, I'd like to clarify some confusion resulting from some citations. The verdicts are inconsistent between the two counts, there's no doubt. Defendant Drozowski was found liable for unfair competition, and Defendant Vinifera was found not liable for unfair competition. That can be found in the record at Cites A-95 and A-99. So there is no doubt that these two verdicts are, quote-unquote, irreconcilably inconsistent. Also, with respect to Judge Durkin's rulings that were addressed by Chief Judge Wood, he did not find that the jury's finding on the breach of fiduciary duty claim would bind all claims. Rather, he clarified, I think it's at A-103, that the jury verdict was advisory for the equitable claims. I think counsel's misreading Judge Durkin's early order, which never had broadly required the breach of fiduciary duty claims to extend all claims. Also, with respect to the question regarding the different injuries, the same conduct of Defendant Drozowski, which is all throughout the record and the court is very familiar with it based on its questions, caused both the injuries. That injury constituted an unfair competition on one hand and a breach of fiduciary duty on another. Also, going back to Judge Durkin's rulings, he ruled on both of these things, so there's no law of the case issue. Nothing would have prevented him, which he did, to go back and revise a prior one. I also want to talk about this idea that these differing parties explain away this inconsistency. That does not solve the inconsistency internal to the unfair competition count. There was only one defendant found liable for unfair competition, and that was Defendant Drozowski. If we look through all of the cases, including the different circuits and OHA, COSMINCA, and the Seventh Circuit cases, including Carter and Will v. Comprehensive Accounting, and you look at what Judge Durkin and the parties attempted to do with that jury before it was disbanded, I think it's clear that, at least with respect to the unfair competition count, that confusion reigns supreme. Thinking about this in terms of policy and finality, I don't know what else Judge Durkin could have done with that jury to try to highlight the inconsistency. I was there at sidebar. Everyone was, in effect, stunned. I think when we look at this policy determination as to whether or not the Seventh Circuit wants to follow along with some of the other circuits, I think OHA is extremely instructive in that we need to realize that despite best efforts to craft and communicate jury instructions to juries, there will be these moments where the confusion of the jury should not result in an unfair result for the parties. This result is unfair to both parties. Either party could claim victory here. Finality is important, but before we leave this, it's important to think about this particular case. What took this case to go from plaintiffs filing it in 2012 to a verdict in 2018? Well, there were many delays, respectfully none of which were caused by plaintiffs. One of the defendants filed for bankruptcy. That bankruptcy instituted an automatic stay as to one of the defendants. He was the president and chief witness for the other defendants. I can tell you from having tried to take discovery of the remaining defendant, it didn't work so well. Okay. I think your time is now up, so you should wrap up, please. Sure. The other factors were he was then subsequently indicted, which delayed his bankruptcy. We had the retirement of two judges that had been assigned to the case, which obviously is no fault of the court or the parties, but that's what extended it. To have a plaintiff go through that extended delay and then simply be left with a final unfair result, I don't think should be the policy of the circuit. Thank you. All right. Thanks to both counsel. We will take this case under advisement. Thank you very much, everybody. Be safe. Be safe.